# UNITED STATES DISTRICT COURT

for the

Northern District of Iowa

| United States of America<br>v.<br>ALLEN MARTIN JONES<br><br>*Defendant(s)* | ) | Case No. 23-CR-04048 |
|---|---|---|

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 7, 2023 in the county of Monona in the Western District of Iowa, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 922(g)(1) | Felon in Possession of Firearm |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

Micah Van Otterloo

*Complainant's signature*

Special Agent Micah Van Otterloo, ATF

*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means.

Date: 07/27/2023

*Judge's signature*

Northern District of Iowa

U.S. Magistrate Judge Mark A. Roberts

*Printed name and title*

**Affidavit in Support of**
**an Application for an Arrest Warrant**

I, Micah J. Van Otterloo, being first duly sworn, do hereby depose and state as follows:

## Introduction

**1.** I make this affidavit in support of a criminal complaint against and an arrest warrant for Allen JONES, for a violation of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by convicted felon).

## Case Agent Background

**2.** I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been employed by ATF since January of 2017. My responsibilities as an ATF Special Agent include investigating violations of federal law specifically but not limited to the areas of firearms, narcotics, explosives, and arson. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy at the Federal Law Enforcement Training Center. In basic training, I received extensive training in the areas of firearms, explosives, and arson. Since my basic training, I have completed additional specialized training through ATF in the areas of interview techniques, the National Integrated Ballistic Information Network (NIBIN), Outlaw Motorcycle Gangs, and Interstate Nexus Expert Training. During my time with ATF, I have investigated numerous drug organizations including lower-level drug dealers and larger multi-defendant drug conspiracy cases. I have investigated gun crimes including those involving narcotics. I have investigated cases involving individuals that have

utilized explosives in an illegal manner and have constructed explosive devices. I have investigated crimes involving federal violations of the National Firearms Act (NFA), including fully automatic firearms, short-barreled rifles and/or shotguns, and destructive devices. Often to facilitate those investigations I have utilized confidential informants, overseeing their work, confirming their information, and ensuring their safety while cooperating with law enforcement. During the course of my duties, I have led and participated in hundreds of investigations into the use of firearms in the furtherance of drug trafficking offenses. Many investigations involved large multi-state conspiracies to traffic illegal narcotics and the criminal possession of firearms to further the narcotics trade.

3. During the course of my duties, I have led and participated in narcotics trafficking investigations involved with marijuana distribution, marijuana grow operations, methamphetamine distribution, methamphetamine manufacturing, acquisition of methamphetamine precursor ingredients, cocaine distribution, crack cocaine distribution, heroin distribution, fentanyl distribution, prescription drug distribution, and other narcotics. Many of these investigations also included the possession of firearms by targets of these investigations for purposes in furtherance of drug trafficking offenses.

4. During the course of my duties, I have authored a Federal Title III Wire Tap Application and an Organized Crime Drug Enforcement Task Force (OCDETF) investigation. I have participated in several other Title III Wire Taps and OCDETF investigations. I led a long-term investigation into the criminal street gang,

Gangster Disciples, and their trafficking of heroin and firearms possession. I led the long-term investigation of the criminal street gang, Hells Angels, and their trafficking of methamphetamine and firearms possession. I have participated in an investigation into a Minneapolis Hmong methamphetamine trafficking organization acquiring methamphetamine from California. I have also participated in an investigation into the methamphetamine trafficking of a local Minneapolis Hispanic organization trafficking methamphetamine internationally. I have also led and participated in hundreds of street level narcotics investigations in which firearms were utilized as a tool to further the drug trafficking efforts of individuals. During these investigations, I have served various roles including: case agent, undercover agent, and confidential informant handler, among other roles. I have purchased illegal narcotics and firearms in an undercover capacity.

5. I was previously employed by the Spencer Iowa Police Department from 2007-2017. In Spencer, I served as a patrol officer, narcotics investigator, general criminal investigator, and Lieutenant supervising the investigations unit, among other duties. I attended many specialized training courses during that time. Some of those trainings are, drug identification, narcotics investigations, interviewing techniques, special weapons and tactics school, management of confidential informants, crime scene management, crisis response for command staff, response to improvised explosive devices, criminal street gang investigations, methamphetamine investigations, Iowa Law Enforcement Intelligence Network (LEIN) training course, and high-risk event planning among other courses. During

my time within the investigations unit, I investigated drug crimes, firearms crimes, burglaries, assaults, and other serious offenses requiring detailed investigation beyond the capabilities of a uniformed officer.

**6.** I was also previously employed by the Oskaloosa Iowa Police Department from 2004-2007. In Oskaloosa, I served as a patrol officer during that time and investigated general crimes requiring a uniformed police officer. I am a graduate of the Iowa Law Enforcement Academy. At the Academy, in addition to other training, I received training in basic narcotic investigations, firearms law, and drug identification among other areas.

**7.** I am a graduate of Northwestern College and received a Bachelor of Arts Degree in Political Science. In addition, I have completed coursework towards a Master's Degree in Justice Administration from Upper Iowa University.

**8.** I am currently a guest professor in the Criminal Justice Program at the University of South Dakota, instructing in the areas of firearm, arson, and explosives investigations.

**9.** I have instructed courses for the International Outlaw Motorcycle Gang Investigators Association.

## Probable Cause

**10.** In the course of my duties with ATF, I have learned the following information from my personal observations and from information provided to me by other law enforcement officers. This affidavit is intended to show merely that there is

sufficient probable cause for the requested warrant. It does not set forth all of my knowledge about this matter.

**Identification of JONES**

**11.** On July 7, 2023, I was notified by local law enforcement in Monona County, Iowa, of an investigation into an alleged kidnapping and felon in possession of a firearm incident. I was notified by deputies that Allen JONES was the suspect in this investigation. I gathered information from their investigation and undertook further investigative steps to substantiate the facts of the case.

**12.** I conducted a criminal history check of JONES and learned he has several prior felony convictions. JONES was convicted of Delivery of a Controlled Substance, Nebraska District Court for Buffalo County, under case number D09CR070000097, on or about 5/13/2010; Burglary, Nebraska District Court for Hall County, under case number D08CR120000347, on or about 1/23/2013; and Possession of a Firearm by a Convicted Felon, United States District Court District of Nebraska, under case number 4:12CR3032-001, on or about 11/1/2012.

**Alleged Kidnapping**

**13.** In the early afternoon of July 7, 2023, JONES called his supervisor at the Ute Tire Shop. JONES stated to his supervisor his car would not start and that he would need a ride back to work after his lunch break. The supervisor instructed the victim, another Ute Tire Shop employee, to drive a company pickup truck to JONES' residence and pick him up. When the victim left to get JONES, he left his telephone at the shop. The supervisor later learned this when she called the victim

during the incident, and his cellular phone rang inside the shop. The victim went to JONES' residence in Ute, Iowa, and pulled into the driveway. According to the victim, JONES was inside his garage at that time and stuck his head out of the walk-in door making visual contact with the victim. The victim reported that JONES then waved for the victim to come into his garage, which he did.

**14.** When the victim walked into the garage, JONES pointed a black shotgun at him. JONES stated they would be going for a ride and ordered the victim into the driver's seat. According to the victim JONES sat in the passenger seat and kept the shotgun in his possession, often pointed at the victim. According to the victim he went with JONES against his will.

**15.** The victim reported that JONES instructed the victim to drive to the Black Bird Bend Casino in Onawa, Iowa. As they drove, JONES stated he was going to shoot up the casino and use the victim as a human shield. JONES stated that law enforcement wouldn't shoot an innocent person in front of him, so JONES would not be shot immediately. JONES made several comments about this being his last day on earth along with other suicidal and homicidal ideations. The victim stated that JONES told him he would not get hurt if he followed his instructions and did not try to escape. The victim stated he was in fear for his life during the incident and believed JONES would follow through with his threats.

**16.** During the approximate thirty-minute drive from Ute to Onawa, the victim said JONES talked about a recent break up with his girlfriend. (Note: Local law enforcement substantiated this information through a review of previous calls for

service involving JONES and his girlfriend). The victim encouraged JONES to talk with his girlfriend before committing the mass-shooting in an attempt to stall JONES. JONES agreed and ordered the victim to change direction and drive to Vail, Iowa. JONES indicated to the victim that he believed his girlfriend now lived in that area. Vail was approximately one hour away from their current location. During this time the victim said JONES offered him marijuana which the victim stated he initially refused. The victim reported that JONES insisted and the victim felt obliged to use to keep JONES happy.

**17.** As they neared Mapleton, Iowa, JONES stated he was hungry and also wanted beer. JONES instructed the victim to pull into the Cenex gas station on the edge of Mapleton. JONES initially planned to enter the store himself, but said he changed his mind and did not want to leave his shotgun in the truck. Therefore, JONES told the victim to enter the store and purchase the items. The victim was instructed not to attempt an escape.

**18.** The victim reported he entered the store and selected some beer. He then held the beer case up to the window for JONES to approve and see he was complying with orders. The victim then turned back towards the counter but instead of paying he continued walking to a back door and storage room. The victim set the beer down and ran out the back door of the Cenex away from JONES. The victim said he ran alongside a storage unit and across a field which was out of the vision of JONES. The victim then crossed the Maple River and ran across another field to the Mapleton Airport. (Note your affiant walked this path with the victim

and believes it to be a distance of several hundred yards on each side of the river). There he found a worker and begged he or she to call 911 stating that he had been kidnapped. The worker did and law enforcement was summoned.

**19.** When local law enforcement arrived, in response to the 911 call, they found the victim was visibly wet and frightened. He expressed a concern that JONES could find him and only felt safe once law enforcement arrived. The victim told law enforcement that he grew up in this area and knew the airport and a veterinarian clinic were beyond the river. His intent was to run to safety to one of those locations. The victim stated he considered running the other direction but thought JONES may be able to see him if he ran in that direction.

**20.** Deputies learned that JONES had left the Cenex on foot and proceeded to the Dollar General Store across the street. JONES was located there and placed under arrest without further incident. On his person, Deputies located methamphetamine. Deputies located the pickup truck described by the victim still parked at the Cenex and completed a consent search of the victim's truck. Deputies located a black Remington 870 12-guage shotgun loaded with several rounds of shotgun ammunition. (Note: I have completed a nexus examination on the shotgun and have concluded that it has traveled and therefore affects interstate commerce.)

**21.** Deputies spoke with JONES in a post-Miranda interview. JONES confirmed that the victim was coming to pick him up and bring him to work. JONES stated he had smoked and ingested methamphetamine anally on his lunch break. JONES

stated he was unclear on many details due to prior mental health issues and recent methamphetamine use. JONES did not have a plausible explanation on why the victim would fabricate a kidnapping allegation and why he fled from the Cenex asking for law enforcement help.

**Search Warrant**

**22.** Deputies subsequently executed a search warrant at the residence of JONES. They located other firearms, ammunition, and methamphetamine drug paraphernalia. Deputies located ammunition of the same caliber and manufacturer as that located in the Remington 870 shotgun from the pickup. Additionally, deputies located one specific rifle that the victim previously described seeing in JONES' garage during his abduction.

**Independent Witnesses**

**23.** Multiple clerks at the Cenex confirmed that JONES entered their store and asked where the victim was using his first name.

**24.** Your affiant spoke with a manager at the Mapleton Security National Bank. The manager stated that she was in her office on July 7, 2023, in the early afternoon hours. The manager stated that she was looking out her office window while working. The Security National Bank is directly across the street from Cenex and the manager has an office that faced the Cenex. The manager observed a male run out of the backdoor of the Mapleton Cenex and towards the storage units. She stated he ran behind the storage unit towards a field and she could not see him

after he went behind the unit. The manager stated it looked odd because he was running fast from the back door and just took off.

**25.** The manager did not have a definite time frame at that time. The manager stated she went back to work and was alerted by other staff of a large law enforcement presence at the Dollar General store adjacent to the bank. The manager did not know the two events may have been related. The manager stated it was approximately 45 minutes to an hour from the time she saw the male running to the arrival of law enforcement.

**26.** Dispatch records show law enforcement encountered JONES at the Dollar General store at 2:58 P.M. and received the 911 call (indicating that J.B. was at the Mapleton airport asking for help) at 2:33 P.M. Clerks at the Cenex reported JONES entered the Cenex at approximately 2:15 P.M.

**27.** I obtained video from the Security National Bank during that timeframe and personally reviewed it. Video showed a male matching the clothing and physical characteristics JONES walk from the area of the Cenex across the street and towards the Dollar General Store. This occurred at approximately 2:34 P.M. I checked for security video from the Cenex and was advised they do not have video cameras.

**28.** Based on the above, and my training and experience, I believe that there is probable cause to believe Allen JONES has violated Title 18, United States Code, Sections 922(g)(1) (possession of a firearm by convicted felon) by possessing a shotgun as a felon.

**29.** I declare under the penalty of perjury that the above-forgoing facts and circumstances are true and correct to the best of my knowledge and belief.

Micah Van Otterloo

Special Agent Micah Van Otterloo
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this 27th day of July, 2023.

Mark A. Roberts
United States Magistrate Judge
Northern District of Iowa